### Ed OLIVER and Valery Oliver, Appellants–Plaintiffs,

v.

### PINNACLE HOMES, INC. and Pinnacle Building Systems Corporation, Appellees–Defendants.

### No. 43A03–0201–CV–15.

Court of Appeals of Indiana.

June 17, 2002.

---

David C. Kolbe, Warsaw, Indiana, Attorney for Appellants.

Alan L. Weldy, Yoder, Ainlay, Ulmer & Buckingham, Goshen, Indiana, Attorney for Appellees.

## OPINION

SHARPNACK, Judge.

Ed and Valery Oliver (collectively, the "Olivers") appeal the trial court's grant of summary judgment in favor of Pinnacle Building Systems Corporation ("PBSC"). The Olivers raise one issue, which we restate as whether the trial court erred by granting PBSC's motion for summary judgment because PBSC is the alter ego or successor corporation of Pinnacle Homes, Inc. ("PHI"). We affirm.

The facts most favorable to the Olivers follow.[1] On August 28, 1997, the Olivers entered into a construction contract with PHI for the construction and placement of a modular home. PHI ordered the Olivers' modular home from PBSC, a manufacturer of factory-built homes. After PHI completed its work on the Olivers' home, the Olivers were unhappy with the construction of their new modular home. Accordingly, the Olivers demanded that PHI perform additional work on their home to correct the various problems. However, the problems were never corrected to the Olivers' satisfaction.

On May 14, 1999, the Olivers filed a complaint against PHI alleging numerous contractual breaches in the construction of their modular home. After conducting extensive discovery, the Olivers learned that PHI effectively ceased its business operations following the completion of their modular home. Thus, on March 12, 2001, the Olivers filed a motion under Ind. Trial Rule 19 to add PBSC as a party necessary for adjudication, which the trial court granted. On June 15, 2001, the Olivers amended their complaint to add PBSC as a co-defendant, alleging that PBSC was the alter ego or successor corporation of PHI. In response to the Olivers' amended complaint, PBSC filed a motion for summary judgment, which the trial court eventually granted.

The sole issue raised is whether the trial court erred by granting PBSC's motion for

1. In their reply brief, the Olivers ask us to strike PBSC's statement of undisputed facts. We direct PBSC's attention to Ind. Appellate Rule 46(A)(6)(c), which provides: "The statement [of facts] shall be in narrative form and shall not be a witness by witness summary of the testimony." *See also* Ind. Appellate Rule 46(B)(1). While it is true that PBSC's statement of undisputed facts does not conform to our appellate rules, it is unnecessary to strike such statement because the statement is essentially a reprint of the affidavit of Christopher Graff, which was properly designated to PBSC's motion for summary judgment. As such, the averments contained in Christopher Graff's affidavit are properly before this court.

summary judgment because PBSC is the alter ego or successor corporation of PHI. A trial court's grant of summary judgment is "clothed with a presumption of validity." *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993). On review of a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *see also Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992).

We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Ind. Trial Rule 56(C), (H). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). Although the nonmovant has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his day in court. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997).

In the present case, the Olivers contend that the trial court's grant of summary judgment in favor of PBSC was erroneous because genuine issues of material fact exist regarding whether PBSC is the alter ego or successor corporation of PHI. As PBSC was PHI's alter ego or successor, the Olivers argue, the trial court should have pierced PBSC's corporate veil and held it liable for the outstanding debts of PHI. It is undisputed that the construction contract between the Olivers and PHI, for the construction and placement of the Olivers' modular home, did not directly involve PBSC. Thus, any liability imputed to PBSC, which derives from the construction contract between the Olivers and PHI, could only arise from piercing the corporate veil of PBSC.

It is well settled that Indiana courts are reluctant to disregard a corporate entity; however, we may do so to prevent fraud or unfairness to third parties. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1232 (Ind.1994). "When a court exercises its equitable power to pierce a corporate veil, it engages in a highly fact-sensitive inquiry." *Id.* The legal fiction of a corporation may be disregarded "where one corporation is so organized and controlled and its affairs so conducted that it is a mere instrumentality or adjunct of another corporation." *Smith v. McLeod Distributing, Inc.*, 744 N.E.2d 459, 462 (Ind.Ct.App.2000). Indiana courts refuse to recognize corporations as separate entities where the facts establish that several corporations are acting as the same entity. *Id.* "While no one talismanic fact will justify with impunity piercing the corporate veil, a careful review of the entire relationship between various corporate entities, their directors and officers may reveal that such an equitable action is warranted." *Stacey–Rand, Inc. v. J.J. Holman, Inc.*, 527 N.E.2d 726, 728 (Ind.Ct. App.1988), *reh'g denied.*

Our supreme court has held that the plaintiff bears the burden of proof with respect to piercing the corporate veil. To

decide whether the plaintiff has met this burden, we consider whether the plaintiff has presented evidence showing:

> (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.

*Aronson v. Price*, 644 N.E.2d 864, 867 (Ind.1994), *reh'g denied.*

 However, in a case, such as this one, where a plaintiff seeks to pierce the corporate veil in order to hold one corporation liable for another closely related corporation's debt, the eight *Aronson* factors are not exclusive. *Smith*, 744 N.E.2d at 463 (piercing the corporate veil where the plaintiff did not satisfy the *Aronson* factors in support of its claim to pierce the corporate veil of a corporation). Rather, in such cases, we may consider additional factors, including whether: (1) similar corporate names were used; (2) the corporations shared common principal corporate officers, directors, and employees; (3) the business purposes of the corporations were similar; and (4) the corporations were located in the same offices and used the same telephone numbers and business cards.[2] *Id.* Additionally, we may disregard the separateness of affiliated corporations when the corporations are not operated as separate entities but are manipulated or con-

trolled as one enterprise through their interrelationship to cause illegality, fraud, or injustice or to permit one economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise. *Id.* The indicia of common "identity," "excessive fragmentation," or "single business enterprise" corporations may include, among other factors, the intermingling of business transactions, functions, property, employees, funds, records, and corporate names in dealing with the public. *Id.*

 Here, the Olivers maintain that PBSC was the alter ego or successor corporation of PHI. As such, they urge us to pierce PBSC's corporate veil and hold it liable for PHI's outstanding debts. To support their position, the Olivers rely upon our holding in *Smith*, 744 N.E.2d at 464. In *Smith*, we recognized that the plaintiff failed to present sufficient evidence relevant to the *Aronson* factors in support of its claim to pierce the corporate veil of co-defendant, Colonial Mat. *Id.* at 463–464. Nevertheless, we pierced the corporate veil finding that co-defendant, Colonial Industrial, was merely an adjunct to or alter ego of Colonial Mat. *Id.* In so doing, we considered the obvious similarity between the names of the two corporations and the fact that the president's business card contained the name of both corporations. *Id.* Second, we observed that the two corporations were engaged in virtually identical lines of business. *Id.* Third, we looked at the commonality of officers and directors of the two corporations and found that the two corporations shared a

---

**2.** The Olivers argue that, in its appellee's brief, PBSC distorts the holding and significance of our decision in *Smith*, 744 N.E.2d 459. We agree. PBSC has clearly misinterpreted our analysis in *Smith*. *Id. Smith* does not require that two corporations share identical business purposes and corporate shareholders, officers, or directors in order to pierce the corporate veil. *Id.* Rather, it merely requires that the two corporations have similar business purposes and common officers and directors. *Id.*

president, director, treasurer, and office manager. *Id.* Fourth, we observed that the two corporations operated at the same address and used an identical phone number. *Id.* In *Smith*, we further considered evidence that the corporations intermingled their assets or that one corporation paid for the obligations of the other. *Id.* After considering all of these factors, we concluded that there was ample evidence indicating that, in dealing with the public, the two corporations were adjunct corporations, mere alter egos, or instrumentalities of each other that shared a common identity. *Id.* at 465. Therefore, in the interest of equity, we held Colonial Mat liable for the debt of Colonial Industrial to protect the innocent plaintiff from unfairness. *Id.*

Relying upon *Smith*, the Olivers maintain that genuine issues of material fact exist, in this case, regarding whether PBSC is the alter ego or successor corporation of PHI. Accordingly, the Olivers assert that the trial court's grant of summary judgment in favor of PBSC was inappropriate. In an attempt to establish a genuine issue of material fact precluding the trial court's grant of summary judgment, the Olivers highlight the following commonalities between PHI and PBSC:

 a. [PHI] and [PBSC] share a similarity in names;

 b. PHI and PBSC share the same president . . . ;

 c. PHI and PBSC share the same lawyers;

 d. PHI and PBSC share the same accountants;

 e. PHI and PBSC share the same bank depository;

 f. Records of PHI and PBSC are in the control of [the president] and some records of PHI and PBSC may be stored together at several possible places including the PBSC manufacturing facility;

 g. PHI and PBSC share the same telephone number on stationary [sic];

 h. PHI and PBSC share a common shareholder . . . ;

 i. PBSC was formed to manufacture homes to be sold and erected by PHI;

 j. After PHI effectively ceased operations, PBSC took over the role of manufacturer, dealer, and builder until approximately the time this litigation ensued;

 k. PHI paid off a loan to H. Douglas Schrock . . . several months before the Oliver contract. As noted, Mr. Schrock is also a shareholder in PBSC;

 l. The Olivers purchased their home from PHI and visited the PBSC facilities for the selection;

 m. PBSC has supplied a modular home to PHI for which no payment has been rendered as of December 5, 2000 . . . ;

 n. PHI and PBSC share the same corporate mailing address;

 o. The corporate registered address of PHI and PBSC is actually the mailing address of a third business . . . ;

 p. PHI was spiraling into economic distress before it entered into the Oliver contract.

Appellants' Brief at 13–14 (citations and footnote omitted).

Because the present case involves piercing the corporate veil to hold one corporation liable for the debts of another corporation, we analyze the factors outlined in *Smith*. *Smith*, 744 N.E.2d at 464. Our review of the designated evidence reveals a few similarities between the corporate structures of PHI and PBSC. For example, PHI and PBSC share an obvious similarity between their names, in that their

names both begin with the word "Pinnacle." Next, PHI and PBSC share a president and a common shareholder. In addition, because we consider the evidence most favorable to the Olivers, we assume that PHI and PBSC operated from the same address and used an identical phone number.

However, the designated evidence reveals numerous differences between the business operations of PHI and PBSC. First, apart from a common president and shareholder, PHI and PBSC share no other common officers or directors. The Olivers designated evidence that PHI and PBSC utilized the same attorneys and accountants; however, such evidence is of no consequence to our analysis under *Smith.* Second, the business purposes of PHI and PBSC are not similar. In general, PHI constructs "stick built" homes; whereas, PBSC acts as a subcontractor to builders/dealers, including but not limited to PHI, by manufacturing modular homes and selling them directly to the builders/dealers. In particular and with respect to the Olivers' modular home, PHI contractually agreed to construct and place the Olivers' modular home. To carry out its contract, PHI ordered the modular home from PBSC. Thus, undoubtedly, the designated evidence demonstrates an interrelationship between the businesses of PHI and PBSC. However such interrelationship is insufficient to show that the business purposes of the two corporations were similar. *See, e.g., Extra Energy Coal Co. v. Diamond Energy & Resources, Inc.,* 467 N.E.2d 439, 441 (Ind.Ct.App.1984) (finding separate and distinct business purposes between a coal brokerage company and a corporation engaged in the distribution of refined products, including fuel oil and gasoline).

Further, the Olivers have presented no evidence demonstrating that PHI and PBSC intermingled their assets or that one corporation paid for the obligations of the other. To establish a genuine issue of material fact that PHI and PBSC commingled assets, the Olivers designated evidence that: (1) PBSC supplied a modular home to PHI for which no payment has been rendered; (2) PHI and PBSC utilized the same bank depository; and (3) PHI repaid a loan to a shareholder of PBSC. However, the mere fact that PHI has not paid for a modular home that it received from PBSC does not prove that PBSC assumed the debts of PHI. Rather, such evidence shows, if anything, that PBSC is now a creditor of PHI with respect to that modular home. In addition, the fact that the two corporations utilized the same bank depository does not create a genuine issue of material fact that PHI and PBSC commingled assets. Indeed, the Olivers have not designated any evidence showing that the two corporations used the same bank accounts or commingled funds. Lastly, the fact that PHI repaid a loan to a shareholder of PBSC does not create a genuine issue of material fact that PHI and PBSC commingled assets. Rather, the designated evidence reveals that at the time of PHI's incorporation, one of PHI's shareholders loaned PHI money. As a consequence, PHI had an obligation to repay that money to the shareholder, who happened to also be a shareholder of PBSC. Accordingly, the designated evidence is insufficient to create a genuine issue of material fact that PHI and PBSC commingled assets such that they were mere instrumentalities of each other.

The Olivers also attempted to create a genuine issue of material fact that PHI and PBSC intermingled corporate business records. Specifically, the Olivers designated evidence that PHI's business records are in control of PBSC's president and may be stored at several possible places including the PBSC manufacturing facility.

However, the fact that PHI's records may be stored at PBSC does not tend to prove that the two corporations intermingled their records. Lastly, the Olivers have failed to present any evidence that the business cards of Christopher Graff, president of both PHI and PBSC, contained the names of both corporations.

After considering all of the *Smith* factors, we conclude that the Olivers failed to present sufficient evidence to create a genuine issue of material fact regarding whether, in dealing with the public, PHI and PBSC were adjunct corporations, mere alter egos, or instrumentalities of each other that shared a common identity. *See, e.g., Winkler*, 638 N.E.2d at 1233. The Olivers did not carry their burden to show that PBSC's corporate veil should be pierced. *See, e.g., id.* Consequently, the trial court did not err by granting PBSC's motion for summary judgment. *See, e.g., id.*

For the foregoing reasons, we affirm the trial court's grant of PBSC's motion for summary judgment.

Affirmed.

FRIEDLANDER, J., and BROOK, C.J., concur.