# FOR PUBLICATION



FILED
Mar 29 2012, 9:25 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**EDWARD P. GRIMMER**
Austgen Kuiper & Associates, P.C.
Crown Point, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT F. PARKER**
Burke Costanza & Carberry LLP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ZIESE & SONS EXCAVATING, INC., | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1104-PL-180 |
| | ) | |
| BOYER CONSTRUCTION CORPORATION | ) | |
| AND BOYER CONSTRUCTION GROUP | ) | |
| CORPORATION, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |
| | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable John R. Pera, Judge
Cause No. 45D10-0912-PL-153

**March 29, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Ziese & Sons Excavating, Inc., ("Ziese") appeals the trial court's grant of summary judgment in favor of Boyer Construction Group Corporation ("Group"). We conclude that there is a genuine issue of material fact regarding whether Group is the alter ego and successor of Boyer Construction Corporation ("Corporation"). For this reason, the trial court correctly denied Ziese's motion for summary judgment but erred in granting summary judgment in favor of Group. We affirm in part, reverse in part, and remand for further proceedings.

**Facts and Procedural History**

Corporation, formed in July 1988, was a general contracting and construction-managing entity. From formation until early 1999, Corporation had three shareholders: Bruce Boyer and James Thomas' two sons. In January 1999, the sons conveyed their shares to Thomas. By 2000, Thomas had conveyed those shares to Boyer in exchange for a $29,000 promissory note.

In the summer of 2003, Corporation contracted with Ziese to provide labor and materials for the Knode Creek Retail Development. By 2004, Ziese had fulfilled its obligation under the contract with Corporation. However, Corporation did not pay Ziese.

In January 2006, Group was formed. Group, like Corporation, is a general contracting and construction-managing entity. At the time of incorporation, Group had a single shareholder, Thomas. One month after its formation, Group purchased a selection of Corporation's assets for $100,000.[1] Appellant's App. p. 28. Specifically, the purchase

---

[1] At the time of the asset sale, Boyer was the sole shareholder and corporate officer of Corporation.

2

agreement provided that Group would purchase two of Corporation's contracts—one with KT Clay, LLC and another with GJ 9600, LLC.[2] Group also purchased some of Corporation's personal property. The agreement provided that Group was purchasing Corporation's assets "free of all liabilities and encumbrances," "liens," and "indebtedness." *Id.* at 28-29. Excluded from the purchase were "real estate, cash on hand and in bank, prepaid insurance and other prepaid items, accounts receivable, notes receivable, securities, other investments, and all other assets owned by Seller and not described in Section 1 hereof." *Id.* at 34.

After purchasing these assets, Group commenced business. Group uses a name nearly identical to Corporation, Corporation's website address, and Corporation's trademark and logo, including font, red color, and layout, as shown here:



[3]

This logo was displayed on Group's website:

---

[2] James Thomas' sons are the sole shareholders of GJ 9600, LLC, where Thomas is corporate manager. The sons are also two of the three shareholders of KT Clay, LLC.

[3] *See* Appellant's Br. p. 21.



Founded in 1988, Boyer Construction Group Corp. is a design/build general contractor and professional manager of construction services. We deliver a wide range of industrial, distribution, manufacturing, office, retail, recreational, healthcare and commercial projects in the **Chicago** *metropolitan* and *Midwest* regional markets.

**Welcome to Boyer Construction Group Corp.**

**Boyer Construction Group Corp.** is a full-service general **construction** company that can satisfy all of your *construction needs* whether it be a new building or **remodel** of an existing structure you desire.

**Boyer Construction Group Corp.** is a *results* oriented company. The results we produce for our clients are:

- Constant Control of Project Cost and Operations
- Superior Client/General Contractor Interaction and response
- Achievement of Clients Goals
- Meeting and Exceeding Clients Requirements

[4]

These assets were utilized by Group despite not acquiring them under the purchase agreement.

On its website, Group claims a building history that dates back to 1988, nearly two decades before it was incorporated. Included in that history is the Knode Creek Retail Development, the very project for which Ziese seeks payment from Group. The remaining projects listed as complete are also Corporation's building projects. At some point in 2006, Boyer began working for Group. *See* Tr. p. 12. In January 2007, Thomas sold all of his shares in Group to his sons, but he continued to act as the sole officer and

---

[4] *See* Appellant's Br. p. 22.

director of Group.  One year later, Group issued a check to Ziese for $722.57.[5] Appellant's App. p. 128.  Group made no other payments to Ziese.

Following the asset sale, Corporation ceased business operations.  Corporation's accounts receivable were depleted and Corporation made a series of payments on the contracts purchased by Group.  Corporation was administratively dissolved in the spring of 2008.

In August 2009, Ziese filed suit against Corporation and Group, claiming breach of contract, seeking payment for the work performed on the Knode Creek project.  Ziese argued that Group was the alter ego of Corporation such that piercing the corporate veil of Group was appropriate.  Ziese also argued that Group was Corporation's successor and therefore liable for Corporation's debt to Ziese.  In March 2010, Group moved for partial summary judgment with respect to Ziese's claims against it.  Ziese filed a motion in opposition to Group's motion for summary judgment and a cross-motion for summary judgment as to both Group and Corporation.  A hearing was held on the matter, and in April 2011, the trial court entered partial summary judgment in favor of Group.  The trial court denied Ziese's cross-motion for summary judgment against Group and Corporation.

Ziese now appeals.

## Discussion and Decision

When reviewing a grant or denial of a motion for summary judgment, we stand in the shoes of the trial court and are not limited to reviewing the trial court's reasons for

---

[5] Though there is no reference in the memo line to any project or invoice, Ziese contends that this payment is payment of "a portion of the [Corporation]-Ziese liability on Knode Creek."  Appellant's Br. p. 7.

5

granting summary judgment. *Cmty. Care Ctrs., Inc. v. Hamilton*, 774 N.E.2d 559, 564 (Ind. Ct. App. 2002), *trans. denied.* We resolve any doubt about a fact or any inference to be drawn from it in favor of the nonmoving party. *Id.* We will affirm a grant of summary judgment only if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Id.*; *see also* Ind. Trial Rule 56(C). If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party. *Id.* Further, piercing the corporate veil is a fact-sensitive inquiry rendering summary judgment appropriate only in extraordinary circumstances. *Id.* at 570.

On appeal, Ziese contends that the trial court erred in granting Group's motion for summary judgment as the evidence created a genuine issue of material fact regarding whether Group is the successor and alter ego of Corporation. Ziese further argues that the designated evidence entitles it to judgment as a matter of law. We address each of these claims in turn.

## I. Piercing the Corporate Veil

The basic principle of corporate law is that corporate shareholders are liable for acts of the corporation only to the extent of their investment and are not personally liable for the corporation's acts. *Escobedo v. BHM Health Assocs., Inc.*, 818 N.E.2d 930, 933 (Ind. 2004). It is well settled that our courts are reluctant to disregard corporate identity; however, we may do so if it is necessary to prevent fraud or unfairness to third parties. *Oliver v. Pinnacle Homes, Inc.*, 769 N.E.2d 1188, 1191 (Ind. Ct. App. 2002) (citations omitted), *trans. denied*. "When a court exercises its equitable power to pierce a corporate

veil, it engages in a highly fact-sensitive inquiry." *Id.* Corporate identity may be disregarded "where one corporation is so organized and controlled and its affairs so conducted that it is a mere instrumentality or adjunct of another corporation." *Id.* Indiana courts will not recognize corporations as separate entities where evidence shows that several corporations are acting as one. *Id.* "While no one talismanic fact will justify with impunity piercing the corporate veil, a careful review of the entire relationship between various corporate entities, their directors and officers may reveal that such an equitable action is warranted." *Id.*

The party seeking to pierce the corporate veil bears the burden of proof. In determining whether that burden has been met, we consider the following factors: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; and (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form. *Escobedo*, 818 N.E.2d at 933 (citing *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994)).

A subset of piercing the corporate veil is the corporate alter ego doctrine. "The corporate alter ego doctrine is a device by which a plaintiff tries to show that two corporations are so closely connected that the plaintiff should be able to sue one for the actions of the other." *Greater Hammond Cmty. Servs., Inc., v. Mutka*, 735 N.E.2d 780, 785 (Ind. 2000) (citation omitted). The purpose of the doctrine is to avoid the inequity

that results when one corporation uses another corporation as a shield from liability. *Id.* When a plaintiff seeks to pierce the corporate veil on this theory, we consider additional factors, including whether: (1) similar corporate names were used; (2) the corporations shared common principal corporate officers, directors, and employees; (3) the business purposes of the corporations were similar; and (4) the corporations were located in the same offices and used the same telephone numbers and business cards. *Oliver*, 769 N.E.2d at 1192. Corporate identity may be disregarded under the alter ego theory where multiple corporations are operated as a single entity; where they are "manipulated or controlled as a single enterprise through their interrelationship to cause illegality, fraud, or injustice or to enable one economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." *Id.* Factors indicating that a corporation is the alter ego of another may include the intermingling of business transactions, functions, property, employees, funds, records, and corporate names in dealing with the public. *Id.*

Our review of the designated evidence reveals striking similarities between Group and Corporation. Group was created to conduct the same business that Corporation conducted—general contracting and construction management. The names of the two corporations, Boyer Construction Corporation and Boyer Construction Group Corporation, are nearly identical. Group assumed use of Corporation's website address, trademark, and logo despite not acquiring them in the purchase agreement.[6] Ziese designated evidence establishing that Group publically claimed ownership of

---

[6] Though Ziese claims that Group and Corporation have the same corporate employees, Appellant's App. p. 6, 19-20, we are unable to determine from the record to whom Ziese is referring. The record does indicate that Boyer began working for Group at some point in 2006. *See* Tr. p. 12.

Corporation's building history and projects, all of which were completed before Group was formed. Specifically, Group claims as its own the project that is the subject of this case, the Knode Creek Retail Development. Ziese also presented evidence that Corporation's financial records after the asset sale show a significant reduction in accounts receivable, which Ziese claimed was proof that Group and Corporation intermingled their assets by using Corporation's funds to pay Group's expenses on the contracts purchased in the asset sale. Also notable is the fact that Group, which offered no evidence of a debt to Ziese, nonetheless made a payment to Ziese in 2008.

In response, Group simply contends that the alter-ego theory is inapplicable in this case. Group argues that this is so because Group was not in existence when Ziese contracted with Corporation. As a result, Group claims the common factual scenario triggering the alter-ego analysis—"that a plaintiff thought he was dealing with one entity, and then, after the transaction in issue, discovered he was really dealing with the other"—is not present here. Appellant's Br. p. 5-6.

Group cites no case law for the proposition that Group cannot be the alter ego of Corporation simply because Group did not exist when Ziese contracted with Corporation. Instead, Group devotes the bulk of its appellate brief to factually distinguishing the cases upon which Ziese relies. In essence, Group claims that because we have not yet applied the alter-ego analysis in a case with facts like those here, the analysis has no application. We do not believe public policy supports such a narrow interpretation of the doctrine. Under Indiana law, piercing the corporate veil is rooted in principles of equity and a decision to disregard corporate entity depends upon the unique facts of each case. *Oliver*,

9

769 N.E.2d at 1191. The authority of the courts to disregard corporate identity does not stem from the existence of a specific factual circumstance, but rather from the necessity of preventing fraud or unfairness to third parties.[7]

Ziese set forth evidence that Group adopted Corporation's former business purpose. Group also uses a nearly identical name to Corporation. Group assumed use of Corporation's website address, trademark, and logo, and the building history that Group presents to the public as its own is actually Corporation's. This history includes the project that is the subject of this litigation. This is sufficient evidence to create a genuine issue of material fact with respect to whether Group was the alter ego of Corporation. The trial court erred in granting Group's motion for summary judgment on this basis.

Our conclusion does not mean, however, that Ziese is entitled to summary judgment on this issue. We believe that the evidence presented by Ziese created a genuine issue of material fact, and as such, summary judgment is inappropriate for both parties. The decision to pierce the corporate veil is ultimately a fact-sensitive inquiry to be determined after consideration of all evidence submitted, and is rarely appropriate on summary judgment. *See Cmty. Care Ctrs., Inc.*, 774 N.E.2d at 570.

## II. Successor Liability

Ziese also argues that Group is liable for Corporation's debt to Ziese under certain exceptions to the general rule against successor liability, namely, fraudulent sale of assets and mere continuation. Group, in response, argues that Ziese has waived this argument by failing to present it to the trial court. Though the bulk of Ziese's argument to the trial

---

[7] Courts of other jurisdictions have also considered alter-ego status in scenarios involving a subsequently formed corporation. *See Pottschmidt v. Klosterman*, 865 N.E.2d 111, 121 (Ohio Ct. App. 2006); *Lab. Corp. of Am. v. Prof'l Recovery Network*, 813 So.2d 266, 269 (Fla. Dist. Ct. App. 2002).

court indeed focused on the alter-ego theory, Ziese referenced successor liability and confirmed its reliance on that theory of recovery when asked by the trial court. *See* Tr. p. 26 ("It is . . . successor corporations that are cited and discussed in . . . both my initial brief and my response brief."). For this reason, and because we prefer to decide cases on their merits, we proceed to address the substance of Ziese's contentions with respect to successor liability.

"When one corporation purchases the assets of another, the buyer does not assume the debts and liabilities of the seller." *Sorenson v. Allied Prods. Corp.*, 706 N.E.2d 1097, 1099 (Ind. Ct. App. 1999) (citations omitted). There are four general exceptions to this rule: (1) an implied or express agreement to assume liabilities; (2) a fraudulent sale of assets done for the purpose of evading liability; (3) a purchase that is a de facto consolidation or merger; or (4) where the purchaser is a mere continuation of the seller. *Id.* Successor liability is implicated only when the predecessor corporation no longer exists, such as in the case of dissolution or liquidation in bankruptcy. *Id.*

Ziese contends that the second and fourth exceptions to successor liability apply here. In addressing the second exception, we examine badges of fraud to determine whether a fraudulent asset sale took place. *Lee's Ready Mix and Trucking, Inc., v. Creech*, 660 N.E.2d 1033, 1037 (Ind. Ct. App. 1996). These badges include:

> "1) the transfer of property by a debtor during the pendency of a suit; 2) a transfer of property that renders the debtor insolvent or greatly reduces his estate; 3) a series of contemporaneous transactions which strip the debtor of all property available for execution; 4) secret or hurried transactions not in the usual mode of doing business; 5) any transaction conducted in a manner differing from customary methods; 6) a transaction whereby the debtor retains benefits over the transferred property; 7) little or no consideration in

11

return for the transfer; and 8) a transfer of property between family members."

*Id.* When the facts of a case implicate several badges of fraud, an inference of fraudulent intent may be warranted. *Id.* However, no single badge of fraud constitutes a conclusive showing of fraudulent intent; instead, "the facts must be taken together to determine how many badges of fraud exist and if together they constitute a pattern of fraudulent intent." *Id.*

A genuine issue of material fact exists as to whether Ziese may recover under the fraudulent asset sale exception. Group assumed use of Corporation's website address, trademark, and logo despite not acquiring them under the purchase agreement. Group therefore acquired these assets without giving consideration for them. Further, Ziese set forth evidence showing that Corporation's accounts receivable were used to make payments on contracts purchased by Group despite also being excluded from the agreement. Finally, though Group disclaimed liability for debts not acquired through the agreement, Group publically claimed ownership of the project at issue in this case. Group later issued a check to Ziese for payment of a debt despite no evidence of such a debt to Ziese. This evidence is sufficient to create a genuine issue of material fact regarding whether a fraudulent sale of assets took place. It is not sufficient, however, to resolve the issue and entitle Ziese to judgment as a matter of law. The trial court correctly denied Ziese's motion to this effect.

The other exception at issue here, the mere-continuation exception, "asks whether the predecessor corporation should be deemed simply to have re-incarnated itself, largely aside of the business operations." *Cooper Indus. LLC v. City of South Bend*, 899 N.E.2d

12

1274, 1290 (Ind. 2009). In making this inquiry, we consider whether there is a continuation of shareholders, directors, and officers into the new corporate entity. *Id.*

From 1988 through 2010, Corporation and Group were owned or run by four individuals—Boyer, Thomas, and Thomas' two sons. Different combinations of these individuals owned, ran, or were employed by Group or Corporation. For example, from 1988 to 1999, Boyer and the two sons owned Corporation; in 1999, Boyer and Thomas owned the corporation; in 2006, by the time of the asset transfer between Corporation and Group, Boyer owned Corporation and Thomas owned Group, but Boyer worked for Group. One year later, in 2007, the two sons assumed ownership of Group with Thomas acting as sole officer and director. By 2010, Boyer was an officer of Group.[8] These facts give rise to a genuine issue of material fact regarding whether Group was a mere continuation of Corporation. Neither Ziese nor Group was entitled to summary judgment on this issue.

In conclusion, the trial court erred in granting summary judgment in favor of Group as Ziese presented evidence sufficient to create a genuine issue of material fact regarding whether Group and Corporation are alter egos and whether Group is Corporation's successor. We remand for further proceedings to determine whether Group's corporate veil should be pierced and whether the fraudulent sale of assets or mere continuation exceptions apply.

Affirmed in part, reversed in part, and remanded.

---

[8] Group's appellate brief states, "Bruce Boyer has never been a shareholder of Group, and only became an officer or director of Group in September, 2010." Appellee's Corrected Br. p. 3. We were unable to find support for this at the record cite provided by Group, but assume for purposes of our analysis that this statement is true.

ROBB, C.J., and NAJAM, J., concur.