# FOR PUBLICATION



**FILED**

Aug 23 2012, 8:22 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**ADAM D. DECKER**
Crown Point, Indiana

**GERALD M. BISHOP**
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES M. LEWIS**
**MARK D. KUNDMUELLER**
Tuesley Hall Konopa, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

KONRAD MOTOR AND WELDER            )
SERVICE, INC., KONRAD LAMBRECHT, and )
SHARON LAMBRECHT,                  )
                                   )
    Appellants-Defendants,         )
                                   )
        vs.                      )    No. 45A04-1203-CC-109
                                   )
MAGNETECH INDUSTRIAL               )
SERVICES, INC.,                    )
                                   )
    Appellee-Petitioner.           )
                                   )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable William E. Davis, Judge
Cause No. 45D05-0409-CC-252

**August 23, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Konrad Motor & Welder Service, Inc. ("Konrad MWS"), Konrad Lambrecht, and Sharon Lambrecht appeal the trial court's grant of summary judgment in favor of Magnetech Industrial Services, Inc. Konrad MWS and the Lambrechts argue that there is a genuine issue of material fact regarding whether the corporate veil of Konrad Electric, Inc., a previous corporation, should be pierced in order to hold the Lambrechts individually liable for Konrad Electric's debts and whether Konrad MWS is the alter ego of Konrad Electric.

We conclude that the trial court erred in granting summary judgment in favor of Magnetech and piercing Konrad Electric's corporate veil because there are genuine issues of material fact such that this determination should not have been made on summary judgment. However, we conclude that the trial court properly granted summary judgment in favor of Magnetech as to the second issue because Konrad MWS is the alter ego of Konrad Electric.

We therefore affirm in part, reverse in part, and remand.

**Facts and Procedural History**

Konrad Electric was an Indiana corporation that was formed in August 1991. Throughout its seventeen-year existence, Sharon was the sole shareholder, president, secretary, and treasurer of the corporation. Appellant's App. p. 40. Sharon also served as the registered agent for Konrad Electric, with its principal office located on Lindberg street in Griffith, Indiana. *Id*. at 95. Konrad, Sharon's husband, was employed by Konrad Electric as its general manager.

2

According to Sharon, approximately 80% of the work performed by Konrad Electric involved making repairs to electric motors. *Id*. at 96. Konrad Electric also provided welding services for twelve different customers, including Jupiter Aluminum, Magnetech, Meade Electric, and Amex. *Id*. at 58-59. The only equipment owned by Konrad Electric consisted of a pair of used service trucks, a compressor, several metal benches, an office desk, and a computer. *Id*. at 43-44. Konrad testified that he used his personally owed hand tools to complete the work for Konrad Electric.

Corporate records show that from its incorporation until it suspended activities in 2008, Konrad Electric did not have actual meetings. Records show three documents titled "Consent in Lieu of Annual Meeting of the Shareholders and Directors of Konrad Electric, Inc." dated August 1997, 2000, and 2004 with no additional consents or minutes in lieu of such meetings. *Id*. at 85-87. However, Konrad Electric did have a corporate record book and kept all business records, including contracts, payroll records, banking records, filed tax returns, and other corporate records. *Id*. at 95. Konrad Electric also had a corporate bank account from which business expenses were paid. *Id*. at 96.

In May 2004, Jupiter hired Konrad Electric to perform repair work on two large electric motors. Konrad Electric subcontracted part of the work to Magnetech. Notably, Magnetech and Konrad Electric had a long-time business relationship that began when Konrad Electric was formed. In March 2005, after some problems arose, Jupiter filed suit against Konrad Electric in Lake Superior Court. Konrad Electric then filed a third-party complaint against Magnetech claiming it performed defective repair work on the motors, and Magnetech counterclaimed against Konrad Electric for payment of services.

In February 2006, while the lawsuit was pending, Konrad Electric stopped taking new customers and limited its activities to completing work on existing jobs. Also in February 2006, the Lambrechts formed a new corporation called Konrad MWS. *Id.* at 61.

Konrad MWS is an Indiana corporation. Since its inception in February 2006, Konrad has served as the sole shareholder, director, registered agent, employee, and officer of this corporation. The assets used in the start up of this new business consisted of a truck that Konrad "took back from Konrad Electric" as payment for wages owed and Konrad's own hand tools. *Id.* at 59. The address listed for the corporation is the Lambrechts' home address. Konrad admitted that he did not do motor or welding work at that address. Instead, from 2006 to 2008, the two corporations shared the same business location on Lindberg street. Konrad MWS continued conducting business at the Lindberg address until sometime in 2009, when it moved to a new location.

Konrad MWS, like Konrad Electric, repaired electric motors and welding equipment. According to Konrad, approximately 80% of the business of Konrad MWS was related to welding repair and consulting. *Id.* at 99. Both Konrad Electric and Konrad MWS performed these services for the same customers, including Jupiter and Meade.

In May 2008, while the lawsuit was still pending, Sharon signed a resolution to "suspend any further business activity" related to Konrad Electric. *Id.* at 88. According to Sharon, Konrad Electric was not making any money and there were insufficient funds to pay wages or obligations. *Id.* at 96. Sharon withdrew the $293 remaining in Konrad Electric's bank account and paid it to Konrad for wages that were owed. *Id.*

4

In December 2008, Lake Superior Court entered a judgment in favor of Magnetech and against Konrad Electric in the amount of $35,131.95. Konrad Electric, however, was without assets to satisfy this judgment. Accordingly, in January 2011, Magnetech filed a third-party complaint against Konrad MWS and the Lambrechts alleging that: (1) Konrad MWS is the alter ego of Konrad Electric and (2) Konrad Electric's corporate veil should be pierced in order to hold the Lambrechts personally liable for the debts of Konrad Electric. Magnetech moved for summary judgment on both claims. Konrad MWS and the Lambrechts filed a cross-motion seeking summary judgment in their favor. Following a hearing, in February 2012, the trial court entered the following order granting Magnetech's motion for summary judgment and denying the cross-motion filed by Konrad MWS and the Lambrechts:

> As [Konrad MWS] operates the same business as [Konrad Electric], providing the same service to the same customers using the same equipment and operating from the same location it is clearly the alter ego of [Konrad Electric]. Further, as the Lambrechts did not properly capitalize [Konrad Electric] and did not follow corporate formalities and their own Bylaws in operating [Konrad Electric][,] [t]he court has pierced the corporate veil and finds them liable for the debts of [Konrad Electric].

*Id*. at 16.

Konrad MWS and the Lambrechts now appeal.

### Discussion and Decision

It is undisputed that Konrad Electric is liable to Magnetech for $35,131.95. The issue is whether the Lambrechts and Konrad MWS are also liable for Konrad Electric's debt. The trial court found that the Lambrechts and Konrad MWS are indeed liable and granted Magnetech's motion for summary judgment. When reviewing a grant or denial

5

of a motion for summary judgment, we stand in the shoes of the trial court and are not limited to reviewing the trial court's reasons for granting summary judgment. *Ziese & Sons Excavating, Inc. v. Boyer Constr. Corp.*, 965 N.E.2d 713, 719 (Ind. Ct. App. 2012). We resolve any doubt about a fact or any inference to be drawn from it in favor of the nonmoving party. *Id.* We will affirm a grant of summary judgment only if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Id.*; *see also* Ind. Trial Rule 56(C). If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party. *Id.* In addition, "summary judgment should not be granted when it is necessary to weigh the evidence." *Cmty. Care Ctrs., Inc. v. Hamilton*, 774 N.E.2d 559, 569 (Ind. Ct. App. 2002) (quotation omitted), *trans. denied.* The fact that the parties have made cross-motions for summary judgment does not alter our standard of review. *Grinnell Mut. Reins. Co. v. Ault*, 918 N.E.2d 619, 625 (Ind. Ct. App. 2009).

### I. Piercing the Corporate Veil

The basic principle of corporate law is that corporate shareholders are liable for acts of the corporation only to the extent of their investment and are not personally liable for the corporation's acts. *Ziese*, 965 N.E.2d at 719. It is well settled that our courts are reluctant to disregard corporate identity; however, we may do so if it is necessary to prevent fraud or unfairness to third parties. *Id.* "When a court exercises its equitable power to pierce a corporate veil, it engages in a highly fact-sensitive inquiry." *Id.* (quotation omitted).

6

"Because of the bedrock nature of the principle of limited shareholder liability, the burden on a party seeking to 'pierce the corporate veil' is severe." *Escobedo v. BHM Health Assocs.*, 818 N.E.2d 930, 933 (Ind. 2004). Such a party may only recover from a shareholder if the party proves by a preponderance of the evidence "that the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice." *Id.* The fraud or injustice alleged by a party seeking to pierce the corporate veil must be caused by, or result from, misuse of the corporate form. *CBR Event Decorators v. Gates*, 962 N.E.2d 1276, 1282-83 (Ind. Ct. App. 2012). In determining whether that burden has been met, we consider the following factors: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; and (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form. *Ziese*, 965 N.E.2d at 720. These factors are not exhaustive in that not all factors must be shown to support a determination that the corporate veil should be pierced. *Gates*, 962 N.E.2d at 1282.

We first address whether the trial court erred in finding that the initial corporation founded in 1991, Konrad Electric, was a mere instrumentality of the Lambrechts formed with the sole purpose of perpetrating a fraud and therefore whether the Lambrechts should be held individually liable for Konrad Electric's debts. The Lambrechts argue that

the trial court erred in granting Magnetech's motion for summary judgment to pierce the corporate veil of Konrad Electric and hold them individually liable for the $35,131.95 judgment against Konrad Electric. The Lambrechts further argue that they are entitled to judgment as a matter of law.

Magnetech fails to direct our attention to any cases where Indiana courts have pierced the corporate veil on summary judgment. "This is not surprising in light of the fact that it is recognized that the determination of whether there are sufficient grounds for piercing the corporate veil ordinarily should not be disposed of by summary judgment, in view of the complex economic questions often involved, especially if fraud is alleged." *Hamilton*, 774 N.E.2d at 565; *see also Ziese*, 965 N.E.2d at 719 ("[P]iercing the corporate veil is a fact-sensitive inquiry rendering summary judgment appropriate only in extraordinary circumstances."). We must determine whether Magnetech has proven that Konrad Electric's corporate form was so ignored, controlled, or manipulated that it was a mere instrumentality of the Lambrechts and that the misuse of the corporate form would constitute a fraud or promote injustice. To answer this question, we examine the eight factors.

On one hand, Konrad Electric held itself out as a corporation and contracted with numerous companies, including Magnetech, as a corporation. In addition, Konrad Electric had a corporate bank account, banking records, tax returns, payroll records, contracts, and other corporate records. Konrad Electric paid its obligations for seventeen years with no indication that it could not meet its obligations until the $35,131.95 Magnetech judgment. Konrad Electric did not pay the individual obligations of Sharon

8

or Konrad and paid the debts of the corporation only. The Lambrechts did not commingle their personal assets with Konrad Electric.

On the other hand, when Konrad Electric was formed in August 1991, it had limited assets consisting of a used service truck, a compressor, and several metal benches. In addition, except for three times when Sharon adopted a consent in lieu of annual meeting, Konrad Electric did not hold annual shareholder meetings as required by its bylaws. And after Magnetech filed the lawsuit against Konrad Electric, Konrad Electric stopped taking new customers and suspended business operations, and the Lambrechts formed Konrad MWS and continued operating under the new company.[1]

While it may be that Konrad Electric's corporate veil should be pierced, this determination should not have been made on summary judgment. *Hamilton*, 774 N.E.2d at 565. While the facts do not appear to be in dispute, summary judgment is inappropriate where the undisputed facts themselves give rise to conflicting inferences which would alter the outcome. *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 285 (Ind. 1991). More than one inference can be drawn from these facts. One reasonable inference is that Konrad Electric's seventeen-year corporate existence was the result of the Lambrechts' decision to form a limited liability corporation, an attractive option for small-business owners. Another equally reasonable inference is that

---

[1] The fact that in 2006 Konrad Electric ceased taking new customers and the Lambrechts formed Konrad MWS is but one factor the trial court must consider when determining whether the Lambrechts are individually liable for the debts of Konrad Electric. Certainly, the fact that the Lambrechts formed Konrad MWS under the circumstances that they did does tend to show that the Lambrechts used Konrad Electric as their own instrumentality. But we decline to create a bright-line rule assessing personal liability on shareholders who form alter ego corporations. Konrad Electric operated for fifteen years before Konrad MWS's formation, and the conduct of the Lambrechts with regard to Konrad Electric during those fifteen years is also relevant to the court's analysis of whether Konrad Electric was a mere instrumentality of the Lambrechts.

9

Konrad Electric was a mere instrumentality of the Lambrechts, formed with the sole purpose of perpetrating fraud or injustice to others.

Because the record before us is inconclusive as to whether Konrad MWS was merely a sham corporation in existence to allow the Lambrechts to escape liability, we conclude that the trial court erred in piercing Konrad Electric's corporate veil on summary judgment. *See Hamilton*, 774 N.E.2d at 564 (holding that if the court has any doubts concerning the existence of a genuine issue of material fact, it must resolve those doubts in favor of the nonmoving party and reverse the entry of summary judgment). Thus, we remand for further proceedings to determine whether Konrad Electric's corporate veil should be pierced and liability imposed upon the Lambrechts.

On remand, we note that if Konrad Electric's corporate veil is pierced, Konrad, even though not a shareholder, may be held individually liable along with Sharon. *See Fairfield Dev., Inc. v. Georgetown Woods Senior Apartments LP*, 768 N.E.2d 463, 473 (Ind. Ct. App. 2002) (finding Don Martz, allegedly not a director, officer, or shareholder of Fairfield, but nonetheless the principal figure who controlled Fairfield's dealings with other businesses and was intimately involved in Fairfield's projects, personally liable for Fairfield's obligations when its corporate veil was pierced), *trans. denied.*

**II. Alter Ego Doctrine**

We now turn to the issue of whether the trial court erred in finding that Konrad MWS was the alter ego of Konrad Electric. Konrad MWS argues that the trial court erred in granting Magnetech's motion for summary judgment because that conclusion is not supported by the evidence and therefore it is entitled to judgment as a matter of law.

10

Corporate identity may be disregarded "where one corporation is so organized and controlled and its affairs so conducted that it is a mere instrumentality or adjunct of another corporation." *Hamilton*, 774 N.E.2d at 569 (quotation omitted). Indiana courts will not recognize corporations as separate entities where evidence shows that several corporations are acting as one. *Id.* A subset of piercing the corporate veil to hold one corporation liable for the actions of another is the corporate alter ego doctrine. *Ziese*, 965 N.E.2d at 720.

"The corporate alter ego doctrine is a device by which a plaintiff tries to show that two corporations are so closely connected that the plaintiff should be able to sue one for the actions of the other." *Id.* (quotation omitted). "The purpose of the doctrine is to avoid the inequity that results when one corporation uses another corporation as a shield from liability." *Id.* When a plaintiff seeks to pierce the corporate veil using this doctrine, we consider additional factors, including whether: (1) similar corporate names were used; (2) the corporations shared common principal corporate officers, directors, and employees; (3) the business purposes of the corporations were similar; and (4) the corporations were located in the same offices and used the same telephone numbers and business cards. *Id.* Corporate identity may be disregarded under the alter ego doctrine where multiple corporations are operated as a single entity; where they are "manipulated or controlled as a single enterprise through their interrelationship to cause illegality, fraud, or injustice or to enable one economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." *Id.* (quotation omitted). Factors indicating that a corporation is the alter ego of another may

11

include the intermingling of business transactions, functions, property, employees, funds, records, and corporate names in dealing with the public. *Id.*

Applying the alter ego factors to this case, our review of the evidence reveals significant similarities between Konrad MWS and Konrad Electric. The names of the two corporations, Konrad Motor & Welder Services and Konrad Electric, are very similar. The corporations also shared a common employee, Konrad. In addition, although Konrad Electric's shares and ownership were in Sharon's name and the shares of Konrad MWS were in Konrad's name, they both viewed the corporations as family businesses with the same purpose. Sharon testified "*we* went into business in 1991" and "*we* started out with our own personal money." Appellant's App. p. 41-42 (emphases added). Konrad testified that in 1991 he decided to go out and start his own business and at that point formed Konrad Electric, whose ownership is solely under Sharon's name.

Moreover, Konrad MWS was created to conduct the same business that Konrad Electric conducted – repairs to electric motors and welding services. Konrad MWS argues that unlike Konrad Electric, Konrad MWS does very little motor repair business and focuses more on welding repair and consulting. However, this change of business can be attributed to the loss of Konrad Electric's biggest client, Jupiter. Konrad testified that Konrad Electric provided about 80% of the motor repair services to Jupiter. *Id*. at 57. After the lawsuit Konrad Electric did "very little" work for Jupiter, "mostly consulting." *Id*. at 58-59. Evidence was also presented that from Konrad MWS's inception in 2006 until the suspension of Konrad Electric in 2008, the two corporations conducted business out of the same office on Lindberg street.

Also notable is the timing in which the events took place. In March 2005, Jupiter filed suit against Konrad Electric. Konrad Electric was very profitable in 2005 with a gross income of $324,357 and gross profit of $149,520. *Id.* at 47. In February 2006, while the lawsuit was still pending, Konrad Electric ceased taking new customers in anticipation of its suspension and formed a new corporation, Konrad MWS. *Id.* at 61. In December 2008, the trial court entered judgment in favor of Magnetech and against Konrad Electric. *Id.* at 7. Konrad Electric then refused to pay the judgment, claiming insufficient assets. Magnetech later learned that the company was still in business, but under the name of Konrad MWS.

Although we recognize that the decision to pierce the corporate veil to hold one corporation liable for the debts of another corporation is rarely appropriate on summary judgment, the only reasonable inference here is that Konrad MWS is the alter ego of Konrad Electric. That is, Konrad Electric tried to avoid paying the judgment to Magnetech while still conducting the same business under a new name, Konrad MWS. Konrad MWS offers no other reasonable inference.

Magnetech set forth evidence that Konrad Electric and Konrad MWS had similar names and business purposes. Magnetech also showed that the two corporations shared an employee and a business address. Konrad MWS was also conveniently formed shortly after Konrad Electric was sued by Magnetech. We therefore conclude that Konrad MWS is the alter ego of Konrad Electric. Equity requires that Konrad MWS be held liable for the debt of Konrad Electric in order to protect an innocent third party, Magnetech, from unfairness. The trial court was correct in granting Magnetech's motion for summary

13

judgment on this issue. Konrad MWS is therefore liable for Magnetech's $35,131.95 judgment against Konrad Electric.

Affirmed in part, reversed in part, and remanded.

BRADFORD, J., concurs.

CRONE, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

KONRAD MOTOR AND WELDER
SERVICE, INC., KONRAD LAMBRECHT, and
SHARON LAMBRECHT,

    Appellants,

        vs.              No. 45A04-1203-CC-109

MAGNETECH INDUSTRIAL
SERVICES, INC.,

    Appellee.

**CRONE, Judge, concurring in part and dissenting in part.**

I agree with the majority that the only reasonable inference that may be drawn from the undisputed designated evidence is that Konrad MWS is the alter ego of Konrad Electric. I also believe that the only reasonable inference that may be drawn from the undisputed designated evidence is that Konrad Electric was "merely a sham corporation in existence to allow the Lambrechts to escape liability" and that the trial court properly pierced the corporate veil. Slip op. at 10. Therefore, I respectfully dissent as to that issue.

Konrad Electric may have had many of the outward trappings of a bona fide corporation, such as banking and payroll records, but, as the majority observes, it was incorporated with "limited assets consisting of a used service truck, a compressor, and

15

several metal benches"; it "did not hold annual shareholder meetings as required by its bylaws"; and "after Magnetech filed the lawsuit against Konrad Electric, Konrad Electric ceased taking new customers and suspended business operations, and the Lambrechts formed Konrad MWS and continued operating under the new company." *Id*. at 9. All three of these factors, and especially the last, establish beyond reasonable dispute that Konrad Electric was a mere instrumentality of the Lambrechts, who observed corporate formalities only when it suited them and essentially shifted the corporation's only assets, i.e., its corporate opportunities with its existing customer base, to a new corporation in order to avoid judgment in Magnetech's lawsuit. Although piercing the corporate veil is, and should be, a rare occurrence on summary judgment because of the highly fact-sensitive nature of the inquiry involved, I believe that it is appropriate when the relevant facts are undisputed and lead to only a single reasonable conclusion. The trial court reached the right conclusion here.