FILED

Dec 04 2019, 9:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

Brad A. Catlin
Price Waicukuauski Joven & Catlin,
LLC
Indianapolis, Indiana

Eric L. Zagar
Justin O. Reliford
J. Daniel Albert
Christopher Windover
Kessler Topaz Meltzer & Check, LLP
Radnor, Pennsylvania

Jeremy Friedman
David Tejtel
Friedman Oster & Tejtel, PLLC
New York, New York

Robert T. Dassow
William Fredrick Eckhart
Hovde Dassow & Deet, LLC
Indianapolis, Indiana

Stephen J. Oddo
Robbins, LLC
San Diego, California

ATTORNEYS FOR APPELLEES

Scott S. Morrisson
Mark J.R. Merkel
Krieg DeVault, LLP
Carmel, Indiana

Libby Yin Goodknight
Krieg DeVault, LLP
Indianapolis, Indiana

Michael E. Bern
Latham & Watkins, LLP
Washington, District of
Columbia

Christopher Clark
Latham & Watkins, LLP
New York, New York

# IN THE
# COURT OF APPEALS OF INDIANA

Joseph Hipps and Eugene Protz,
*Appellants-Plaintiffs,*

v.

Biglari Holdings, Inc., Sardar Biglari, Philip L. Cooley, Ruth J. Person, Kenneth R. Cooper, James P. Mastrian, BH Merger Company, and NBHSA, Inc.,
*Appellees-Defendants.*

December 4, 2019

Court of Appeals Case No. 19A-CT-101

Appeal from the Hamilton Superior Court

The Honorable Steven R. Nation, Judge

Trial Court Cause No. 29D01-1801-CT-760

**Tavitas, Judge.**

# Case Summary

[1]  Joseph Hipps and Eugene Protz, individually and on behalf of a class of common shareholders ("Shareholders") of Biglari Holdings, Inc. ("Biglari Holdings") appeal the trial court's grant of a motion to dismiss filed by the Defendants, Biglari Holdings, BH Merger Company, NBHSA, Inc., Sardar Biglari ("S. Biglari"), and the other members of the Biglari Holdings board of directors—Phillip Cooley, Kenneth Cooper, James Mastrian, and Ruth Person (collectively, the "Board"). We affirm.[1]

---

[1] We held oral argument in this matter on October 7, 2019, at the University of Notre Dame Law School. We thank the Law School for its hospitality and counsel for their presentations.

# Issue

Shareholders raise one issue, which we restate as whether the trial court properly dismissed their complaint against Defendants.

# Facts

Biglari Holdings is a publicly-traded company incorporated in Indiana that, among other things, franchises and operates two restaurant chains—Western Sizzlin and Steak 'n Shake. S. Biglari is the CEO and chairman of the Board of Biglari Holdings. Cooley, Cooper, Mastrian, and Person are the remaining members of the Board.

The Lion Fund and the Lion Fund II (collectively, "the Lion Funds") are private limited partnerships that each own substantial shares of Biglari Holdings. In turn, Biglari Holdings is the majority limited partner of the Lion Funds. Biglari Capital Corp. ("Biglari Capital") is the general partner of the Lion Funds, and S. Biglari is the chairman, CEO, and sole owner of Biglari Capital.[2]

---

[2] In April 2010, Biglari Holdings acquired Biglari Capital for $4.1 million. In July 2013, Biglari Holdings sold Biglari Capital back to S. Biglari for $1.7 million. Biglari Capital also "distributed to [Biglari Holdings] almost all of Biglari Capital's limited partnership interests in the Lion Fund, totaling $5.8 million," but Biglari Capital retained the general partnership interest in the Lion Funds. Appellants' App. Vol. II pp. 29-30. This transaction and others were addressed in a shareholder derivative action in federal court. *See In re Biglari Holdings, Inc. Shareholder Derivative Litigation*, 93 F.Supp.3d 936 (S.D. Ind. 2015). The action was dismissed by the district court. The Seventh Circuit affirmed the district court's dismissal of the action. *See In re Biglari Holdings, Inc. Shareholder Derivative Litigation*, 813 F.3d 648 (7th Cir. 2016).

In 2011 and 2012, Biglari Holdings unsuccessfully sought to create a dual-class capital structure at Biglari Holdings, which required shareholder approval. The dual-class structure would have redesignated common stock as Class A and Class B common stock.

S. Biglari then sought to acquire voting control over Biglari Holdings. Through a series of complex transactions, Biglari Holdings contributed hundreds of millions of dollars in securities and cash to the Lion Funds in exchange for additional limited partnership interests in each of the Lion Funds. The Lion Funds then acquired additional common stock of Biglari Holdings. As a result of these transactions, S. Biglari, through his control of Biglari Capital and the Lion Funds, gained control of 54.7% of the Biglari Holdings common shares.

Having gained voting control over Biglari Holdings, S. Biglari then sought to implement the dual class capital structure previously rejected by the shareholders. On December 21, 2017, Biglari Holdings entered into an agreement ("Reclassification Agreement") whereby Biglari Holdings would merge with BH Merger Company to create NBHSA, Inc. Upon completion of the merger, NBHSA would be renamed Biglari Holdings, Inc. ("New Biglari Holdings"). Under the Reclassification Agreement, shareholders of Biglari Holdings would become shareholders of New Biglari Holdings. Biglari Holdings would be a wholly-owned subsidiary of New Biglari Holdings and renamed OBH, Inc.

For every ten shares of common stock in Biglari Holdings, shareholders would receive ten shares of Class B stock and one share of Class A stock of New Biglari Holdings. Owners of Class B stock would have no voting rights. The purpose of this change was "[t]o sustain the dual goal of maintaining the founder's control and of preserving the option of issuing equity in acquisitions, financings or for other purposes." Appellants' App. Vol. II p. 42. Minority shareholders voiced significant disapproval of the merger plan.

On January 29, 2018, Hipps filed a class action complaint in Hamilton County that sought to enjoin the Reclassification, and Defendants removed the litigation to federal court. Hipps also filed a second state court action, which was removed to federal court. While Hipps' actions were pending in federal court, Protz filed a class action complaint in Hamilton County on March 26, 2018. Protz sought injunctive relief to prevent the merger. In April 2018, the parties reached an agreement whereby: (1) Defendants consented to remand to Hamilton County from federal court; and (2) Shareholders abandoned their request for injunctive relief, agreed to consolidate the actions, and agreed to challenge the Reclassification after it was consummated. The Reclassification plan was finalized on April 30, 2018.

On May 17, 2018, Shareholders filed a consolidated class action complaint against Defendants. The Shareholders' main complaints relate to: (1) the shares acquired by the Lion Funds and the treatment of these shares as voting stock, which Shareholders contend violates the Indiana Business Corporations Law ("IBCL" or "BCL"); and (2) the consummation of the Reclassification

Agreement. According to Shareholders, the voting and alleged improper treatment of the Lion Funds shares allowed S. Biglari to gain voting control of Biglari Holdings and consummate the Reclassification Agreement.

The complaint included the following counts:

(1) Count I, a claim against S. Biglari, as Biglari Holdings' controlling shareholder, for breach of fiduciary duty "by exploiting his position of control to cause [Biglari Holdings] to enter into the Reclassification on terms unfairly beneficial to himself and detrimental to the Class";

(2) Count II, a claim against the Board for breach of fiduciary duty "by, among other things, facilitating and approving the Reclassification, which only serves to benefit S. Biglari at the expense of Plaintiffs and the Class";

(3) Count III, a claim against Biglari Holdings and the Board for breach of the company's articles of incorporation by violating the IBCL by deeming shares acquired by the Lion Funds to be voting shares;

(4) Count IV, a claim against S. Biglari for unjust enrichment by maintaining his voting control "in perpetuity" through consummation of the Reclassification Agreement;

(5) Count V, a claim for declaratory relief against Biglari Holdings and the Board that the voting of the shares acquired by Lion Funds "and treatment of said shares as voting stock violated the IBCL" and the articles of incorporation; and

(6) Count VI, a claim for declaratory relief against Biglari Holdings, New Biglari Holdings, and BH Merger Company that

the Reclassification Agreement was "invalid, void, voidable and/or unenforceable" because the Reclassification Agreement "is the product of breaches of fiduciary duty by S. Biglari and the other members of the Board."

Appellants' App. Vol. II pp. 56-59.

[12] Pursuant to Indiana Trial Rule 12(B)(6), Defendants filed a motion to dismiss the complaint with an attached exhibit. Shareholders filed a response brief with exhibits, and Defendants filed a reply brief in support of their motion to dismiss. After a hearing, the trial court summarily granted Defendants' motion to dismiss. Shareholders now appeal.

## Analysis

[13] Shareholders appeal the trial court's grant of Defendants' motion to dismiss. Indiana Trial Rule 12(B)(6) allows a party to request dismissal for "[f]ailure to state a claim upon which relief can be granted . . . ." A motion to dismiss under Trial Rule 12(B)(6) "tests the legal sufficiency of the [plaintiffs'] claim, not the facts supporting it." *Bellwether Properties, LLC v. Duke Energy Indiana, Inc.*, 87 N.E.3d 462, 466 (Ind. 2017) (citation omitted). Dismissals are improper under Trial Rule 12(B)(6) "'unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief.'" *Id.* (quoting *State v. American Family Voices, Inc.*, 898 N.E.2d 293, 296 (Ind. 2008)). We review a Trial Rule 12(B)(6) dismissal "de novo, giving no deference to the trial court's decision." *Id.* "In reviewing the complaint, we take the alleged facts to be true and consider the allegations in the light most favorable to the

nonmoving party, drawing every reasonable inference in that party's favor." *Id.* The dismissal of a complaint under Trial Rule 12(B)(6) "is seldom appropriate" because such dismissals "undermine the policy of deciding causes of action on their merits." *BloomBank v. United Fid. Bank F.S.B.*, 113 N.E.3d 708, 720 (Ind. Ct. App. 2018), *trans. denied*.

[14] Although not raised by the parties, we note that Indiana Trial Rule 12(B) provides:

> If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. In such case, all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

[15] Here, both parties submitted matters outside of the pleading in arguing the motion to dismiss. Our Court has held:

> when examination of the face of a complaint alone reveals that the plaintiff will not be entitled to relief under any set of circumstances, consideration of external materials aimed at substantiating or contradicting the complaint's factual allegations is irrelevant, because a fortiori the complaint fails to state a claim upon which relief can be granted under any factual scenario.

*Dixon v. Siwy*, 661 N.E.2d 600, 603 (Ind. Ct. App. 1996); *see also Thomas v. Blackford Cty. Area Bd. of Zoning Appeals*, 907 N.E.2d 988, 990 (Ind. 2009) ("If affidavits or other materials are attached to the 12(B)(6) motion, it is treated as

one for summary judgment under Rule 56."). "In that instance, the trial court should exclude materials outside the pleadings which are submitted with a 12(B)(6) motion, rather than convert the motion into one for summary judgment, because the external materials are irrelevant to the motion." *Id.*

[16] The trial court here did not exclude the evidence outside the pleadings, but there is no indication the extraneous materials played a part in the trial court's decision. *See, e.g., Bd. of Commissioners of Union Cty. v. McGuinness*, 80 N.E.3d 164, 167 (Ind. 2017) ("[I]t is apparent from the trial court's disposition of this motion that the designated affidavit played no part in its decision. Thus while it was error for the trial court to not formally exclude the affidavit in its order, that error was harmless."). At oral argument for this matter, both parties agreed that we should apply the motion to dismiss standard of review. As such, we address this matter under the motion to dismiss standard of review, base our decision solely upon the Shareholders' complaint, and exclude the extraneous materials submitted by the parties.

[17] This appeal involves a direct action by shareholders of a publicly-held corporation. This type of action by shareholders was described by our Supreme Court in *G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 234 (Ind. 2001):

> A direct action is "[a] lawsuit to enforce a shareholder's rights against a corporation." BLACK'S LAW DICTIONARY 472 (7th ed. 1999). This action may be brought in the name of the shareholder "to redress an injury sustained by, or enforce a duty owed to, the holder." 2 PRINCIPLES OF CORPORATE GOVERNANCE § 7.01, at 17 (A.L.I. 1994). Direct actions are

typically appropriate to enforce the right to vote, to compel dividends, to prevent oppression or fraud against minority shareholders, to inspect corporate books, and to compel shareholder meetings.[3] *Id.*

In this direct action, the Shareholders' claims pertain to: (1) the voting of the Lion Funds shares; and (2) the Reclassification Agreement, which implemented the merger. We must determine whether the trial court properly dismissed each of the Shareholders' claims.

## I. Counts III and V - Voting of the Lion Funds Shares

Because many of the Shareholders' arguments depend upon whether the Lion Funds properly voted their shares in Biglari Holdings, we begin by addressing this issue. In Count III, Shareholders allege that Biglari Holdings and the Board breached the company's articles of incorporation and violated the IBCL by "reacquir[ing] hundreds of thousands of shares of its common stock through the Lion Funds" and deeming those shares "legally outstanding" and eligible

---

[3] Our Supreme Court also discussed another type of shareholder action—a derivative action:

> Derivative actions, on the other hand, are suits "asserted by a shareholder on the corporation's behalf against a third party . . . because of the corporation's failure to take some action against the third party." BLACK'S at 455. They are brought "to redress an injury sustained by, or enforce a duty owed to, a corporation." A.L.I. at 17. Derivative actions are brought in the name of the corporation and are governed by Trial Rule 23.1 and Indiana Code section 23-1-32-1. To bring a derivative action[,] a shareholder must satisfy four requirements. They are: (1) the complaint must be verified; (2) the plaintiff must have been a shareholder at the time of the transaction of which he complains; (3) the complaint must describe the efforts made by the plaintiff to obtain the requested action from the board of directors; and (4) the plaintiff must fairly and adequately represent the interests of the shareholders. Examples of actions that are typically required to be brought derivatively include actions to recover for loss of a corporate opportunity, to recover corporate waste, and to recover damages to a corporation caused by an officer or director's self-dealing.

*G&N Aircraft, Inc.*, 743 N.E.2d at 234-35.

for voting. Appellants' App. Vol. II p. 57. Similarly, in Count V, Shareholders request declaratory relief that "the voting of the Reacquired Shares and treatment of said shares as voting stock violated the IBCL and the Charter." *Id.* at 58.

[19] In the transactions at issue, Biglari Holdings used company funds to purchase additional shares of the Lion Funds. The Lion Funds then used the funds to purchase additional shares of Biglari Holdings. This system allowed S. Biglari, who is the sole owner of Biglari Capital—the general partner of the Lion Funds—to gain control over 54.7% of the voting stock of Biglari Holdings.

[20] Shareholders argue the Lion Funds' voting of these shares violated two IBCL statutes—Indiana Code Section 23-1-27-2(a) and Indiana Code Section 23-1-30-2. Shareholders also contend that, "[e]ven if the trial court believed that these statutory provisions did not independently prohibit S. Biglari's misconduct, it should have read these provisions in conjunction to fulfill the legislative intent underlying the IBCL as a whole." Appellants' Br. p. 35.

[21] Shareholders' arguments require that we interpret these statutes. The first step in statutory interpretation is determining if the legislature has spoken clearly and unambiguously on the point in question. *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 828 (Ind. 2011). If a statute is clear and unambiguous on its face, no room exists for judicial construction. *Id.* "We are not at liberty to construe a facially unambiguous statute." *Id.* "However, if a statute contains

ambiguity that allows for more than one interpretation, it opens itself up to judicial construction to effect the legislative intent." *Id.*

### *A. Non-Voting Shares*

[22] Indiana Code Section 23-1-27-2(a) provides: "A corporation may acquire its own shares. Unless a resolution of the board of directors or the corporation's articles of incorporation provide otherwise, shares so acquired constitute authorized but unissued shares." Shareholders contend that unissued shares are not entitled to vote.

[23] No Indiana or federal courts have addressed this statute. Under the plain, unambiguous language of the statute, however, the statute is not applicable here. The statute addresses a corporation acquiring its own shares. As Defendants point out, the Biglari Holdings shares were acquired by the Lion Funds, not Biglari Holdings. Biglari Holdings did not acquire its own shares, and accordingly, the statute is inapplicable.

[24] Shareholders, however, argue that the share acquisitions at issue by Lion Funds were "in sum and substance, reacquisitions by the Company that render the Reacquired shares no longer entitled to vote." Appellants' Br. p. 23. According to Shareholders, the Lion Funds are "mere instrumentalities" of Biglari Holdings, and Shareholders advocate that we should disregard the "separate corporate existences" between the Lion Funds and Biglari Holdings. *Id.* at 24.

[25] Corporate identity may be disregarded where one corporation is so organized and controlled and its affairs so conducted that it is a mere instrumentality or

adjunct of another corporation.  *Konrad Motor & Welder Serv., Inc. v. Magnetech Indus. Servs., Inc.*, 973 N.E.2d 1158, 1165 (Ind. Ct. App. 2012).  "Indiana courts will not recognize corporations as separate entities where evidence shows that several corporations are acting as one."  *Id.*  "A subset of piercing the corporate veil to hold one corporation liable for the actions of another is the corporate alter ego doctrine."  *Id.*

> "The corporate alter ego doctrine is a device by which a plaintiff tries to show that two corporations are so closely connected that the plaintiff should be able to sue one for the actions of the other."  [*Ziese & Sons Excavating, Inc. v. Boyer Constr. Corp.*, 965 N.E.2d 713, 719 (Ind. Ct. App. 2012)] (quotation omitted).  "The purpose of the doctrine is to avoid the inequity that results when one corporation uses another corporation as a shield from liability."  *Id.*  When a plaintiff seeks to pierce the corporate veil using this doctrine, we consider additional factors, including whether: (1) similar corporate names were used; (2) the corporations shared common principal corporate officers, directors, and employees; (3) the business purposes of the corporations were similar; and (4) the corporations were located in the same offices and used the same telephone numbers and business cards.  *Id.*  Corporate identity may be disregarded under the alter ego doctrine where multiple corporations are operated as a single entity; where they are "manipulated or controlled as a single enterprise through their interrelationship to cause illegality, fraud, or injustice or to enable one economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise."  *Id.* (quotation omitted).  Factors indicating that a corporation is the alter ego of another may include the intermingling of business transactions, functions, property, employees, funds, records, and corporate names in dealing with the public.  *Id.*

*Konrad Motor & Welder Serv.*, 973 N.E.2d at 1165.

[26] The parties have not directed us to any cases applying the corporate alter ego theory for the purpose of determining whether a corporation's shares can be voted. As we have noted, the corporate alter ego doctrine allows a plaintiff to show that two corporations are so closely connected that the plaintiff should be able to sue one for the actions of the other. That is not the situation we have here; rather, the argument here concerns whether the Lion Funds were entitled to vote its shares in Biglari Holdings. We decline Shareholders' invitation to twist the corporate alter ego doctrine and the clear language of the statute to fit this situation. Indiana Code Section 23-1-27-2(a) is inapplicable here.

### B. Circular Ownership

[27] Next, Shareholders argue that Indiana Code Section 23-1-30-2 was violated. Indiana Code Section 23-1-30-2 provides:

> (b) Absent special circumstances, the shares of a corporation are not entitled to vote if they are owned, directly or indirectly, by a second corporation, domestic or foreign, and the first corporation owns, directly or indirectly, a majority of the shares entitled to vote for directors of the second corporation.

> (c) Subsection (b) does not limit the power of a corporation to vote any shares, including its own shares, held by it in or for an employee benefit plan or in any other fiduciary capacity.

[28] The Statute's Official Comments state:

(b) The [Indiana General Corporation Act ("GCA")[4]] prohibited an issuing corporation from voting any share that "belongs" to the corporation, IC 23-1-2-9(g), an unexplained term generally considered to prohibit a subsidiary from voting shares of its parent but whose application in other contexts was unclear. The BCL expressly prohibits a subsidiary from voting shares of its parent corporation, if the parent owns a majority of the subsidiary's shares. This language does not prohibit, however, the voting of a corporation's own shares in other circumstances where the corporation may have the power to direct the voting, such as shares owned by a limited partnership of which the corporation is the general partner.

(c) The clause "in or for an employee benefit plan or in any other" was added immediately before the words "fiduciary capacity" to state expressly that a corporation has the right to vote shares held by it in or for an employee benefit plan.

Ind. Code § 23-1-30-2, Official Commentary. The Official Commentary may be used by this Court "to determine the underlying reasons, purposes, and policies of this article and may be used as a guide in its construction and application." I.C. § 23-1-17-5.[5]

---

[4] The GCA was the predecessor to the IBCL.

[5] Indiana Code Section 23-1-17-5 provides in full:

> Official comments may be published by the general corporation law study commission (P.L.237-1986) and the business law survey commission (IC 23-1-54-3). After their publication, the comments may be consulted by the courts to determine the underlying reasons, purposes, and policies of this article and may be used as a guide in its construction and application.

[29] As explained by Professor Paul Galanti in the Indiana Practice Series on Business Organizations, "[t]his restriction on circular ownership is designed to prevent management from perpetuating control by direct or indirect corporate ownership of its own shares." 18 IND. PRAC., Business Organizations § 20.8 (2019). "Section 23-1-30-2(b) of the IBCL is not intended to affect the possible applications of common law principles invalidating circular holding situations not within its literal prohibition such as where the issuing corporation owns a large but not a majority interest in the corporation voting the shares." *Id.*

[30] Again, under the plain language of Indiana Code Section 23-1-30-2, the statute is inapplicable here. The statute limits voting rights in certain circumstances between two *corporations*. The Lion Funds, however, are limited partnerships, not corporations. The Official Commentary specifically addressed a similar situation involving a limited partnership when it stated: "This language does not prohibit, however, the voting of a corporation's own shares in other circumstances where the corporation may have the power to direct the voting, such as shares owned by a *limited partnership* of which the corporation is the general partner." Ind. Code § 23-1-30-2, Official Commentary. The circular ownership prohibition of Indiana Code Section 23-1-30-2, accordingly, does not apply here.

[31] We are constrained by the specific language of Indiana Code Section 23-1-20-2. We acknowledge that Defendants structured these transactions in such a way that the actions of Defendants are not prohibited by the IBCL. The statute, however, unambiguously does not apply here.

### C. Conclusion Regarding Counts III and V

[32] Because Indiana Code Section 23-1-27-2(a) and Indiana Code Section 23-1-30-2 are inapplicable here, Shareholders' claims that the voting of the Lion Funds shares violated the IBCL fail. Even accepting Shareholders' facts as stated in their complaint as true, considering the allegations in the light most favorable to the Shareholders, and drawing every reasonable inference in the Shareholders' favor, we conclude that Shareholders are not entitled to relief on Counts III and V. The trial court properly dismissed Counts III and V.

### II. Counts I, II, IV, and VI - Indiana Dissenters' Rights Statute

### A. Summary

[33] We next address Defendants' argument that the Shareholders' remaining claims are barred by the Indiana Dissenters' Rights Statute, Indiana Code Chapter 23-1-44.[6] In general, the Dissenters' Rights Statute allows a shareholder to dissent from certain corporate actions, including a merger, and obtain payment for the fair value of the shareholder's shares. Professor Galanti has explained that:

> In lieu of the right to block the transaction, shareholders who object to extraordinary corporate matters are given the right to require the corporation to buy their shares at a value determined in a statutorily defined manner. This permits them to withdraw from the corporation while permitting the enterprise to continue with those shareholders agreeable to the changes.

---

[6] Defendants also argue that Counts III and V were barred by the Dissenters' Rights Statute. Given our resolution of Counts III and V, however, we need not address this argument.

20 Ind. Prac., Business Organizations § 43.1 (2019) (footnote omitted). The Dissenters' Rights Statute provides the shareholder's exclusive remedy in most circumstances.

[34] If the merger at issue here is covered by the Dissenters' Rights Statute, this Court must determine whether the remaining Shareholders' claims, which relate to the Reclassification Agreement and merger, are covered by the Dissenters' Rights Statute and, therefore, barred. Count I claims that S. Biglari breached his fiduciary duty by causing Biglari Holdings to enter into the Reclassification Agreement. Count II similarly claims that the Board breached its fiduciary duty by approving the Reclassification. Count IV is an unjust enrichment claim against S. Biglari related to the consummation of the Reclassification Agreement. Count VI seeks declaratory relief that the Reclassification Agreement is void. Each of these claims relates to the Reclassification Agreement, which implemented the merger.

### B. Applicability of the Dissenters' Rights Statute

[35] The Dissenters' Rights Statute applies to the following corporate actions:

> (1) Consummation of a plan of merger to which the corporation is a party if:
>
> > (A) shareholder approval is required for the merger by IC 23-1-40, IC 23-0.6-1-7, or the articles of incorporation; and
> >
> > (B) the shareholder is entitled to vote on the merger.

(2) Consummation of a plan of share exchange to which the corporation is a party as the corporation whose shares will be acquired, if the shareholder is entitled to vote on the plan.

(3) Consummation of a sale or exchange of all, or substantially all, of the property of the corporation other than in the usual and regular course of business, if the shareholder is entitled to vote on the sale or exchange, including a sale in dissolution, but not including a sale pursuant to court order or a sale for cash pursuant to a plan by which all or substantially all of the net proceeds of the sale will be distributed to the shareholders within one (1) year after the date of sale.

(4) The approval of a control share acquisition under IC 23-1-42.

(5) Any corporate action taken pursuant to a shareholder vote to the extent the articles of incorporation, bylaws, or a resolution of the board of directors provides that voting or nonvoting shareholders are entitled to dissent and obtain payment for their shares.

(6) Election to become a benefit corporation under IC 23-1.3-3-2.

I.C. § 23-1-44-8(a).[7] Because the corporate action challenged by Shareholders is a merger that required shareholder approval, the Dissenters' Rights Statute is at issue here.

---

[7] Indiana Code Section 23-1-44-8 was amended effective January 1, 2018, to insert "IC 23-0.6-1-7" in subsection (a)(1)(A). *See* Pub. L. No. 118-2017, Sec. 20 (eff. Jan. 1, 2018).

Shareholders' main argument, however, is that the Dissenters' Rights Statute is inapplicable because the merger was not approved by a majority of properly voting shareholders.[8] Defendants argue that the Shareholders did not make this argument below and that the argument is waived. Shareholders contend the issue was raised in the complaint and argued at the motion to dismiss hearing. *See* Appellants' App. Vol. II p. 19 ("[T]he Reclassification would not have been approved but for S. Biglari's illegal voting of the Reacquired Shares in favor of this unfair transaction."); Tr. Vol. II p. 30 ("[T]he Dissenters' Rights Statute only gives finality to mergers that were approved by a majority. So we're asking the Court here to actually enforce the will of the majority that was entitled to vote on this reclassification."). We do not find this issue waived.

---

[8] With little explanation and no citations to authority, Shareholders also argue that the Dissenters' Rights Statute does not bar their "breach of contract and declaratory judgment claims to the extent they seek prospective relief barring these shares from remaining outstanding and entitled to vote." Appellants' Br. p. 39. This argument appears to relate to Counts III and V. We conclude that this argument is waived for failure to make a cogent argument. *See* Ind. Appellate Rule 46(A)(8); *Zavodnik v. Harper*, 17 N.E.3d 259, 264 (Ind. 2014) (waiving a claim due to failure to support the claim with cogent argument or citation to relevant authority).

Shareholders also contend that S. Biglari structured the Reclassification of shares as a merger specifically to take advantage of the Dissenters' Rights Statute. According to Shareholders, the Reclassification of shares could have been accomplished through "a charter or bylaw amendment," but S. Biglari structured it as a merger to strip shareholders of their rights. Appellants' Br. p. 42. Defendants point out that this argument was addressed by our Supreme Court in *Fleming v. Int'l Pizza Supply Corp.*, 676 N.E.2d 1051, 1056 (Ind. 1997), where it held:

> [W]e think it unmistakably clear that the legislature meant to reject the [*Gabhart v. Gabhart*, 370 N.E.2d 345 (1972),] analysis that a merger which has no valid corporate purpose is a de facto dissolution. In our view, the legislature clearly disapproved not only the alternative dissolution remedy but also the notion the judicial inquiry into the purpose of the merger was permitted. And we would also observe that the legislature's approach incorporated *Gabhart*'s teachings that a shareholder's appraisal right could not be enforced by enjoining the merger, 267 Ind. at 383, 370 N.E.2d at 353; and that the judiciary should not intrude into corporate management to the extent of passing upon the "entire fairness" of a merger. 267 Ind. at 388, 370 N.E.2d at 356.

Based on *Fleming*, the Shareholders' argument fails.

According to Shareholders, the Lion Funds shares were not entitled to vote on the merger. Shareholders contend that "only transactions that require and receive approval from a majority of shareholders—and, therefore, comport with the 'majority rule' policy—trigger the dissenters' rights statute. The Reclassification cannot pass that test because it did not receive approval by a majority of the shares 'entitled to vote' on it." Appellants' Br. p. 40. We have, however, concluded that the Lion Funds properly voted its shares. *See supra* Section I. Accordingly, Shareholders' argument fails, and the Dissenters' Rights Statute is applicable here.

### C. Statutory Remedies

In the event of the above corporate actions, including a merger, Indiana Code Section 23-1-44-8(a) provides that "[a] shareholder is entitled to dissent from, and obtain payment of the fair value[9] of the shareholder's shares." The statute provides very specific instructions on notices required to be sent to shareholders, procedures for payment to dissenting shareholders, and judicial determination of the fair value of shares in the case of a closely-held corporation. *See* Ind. Code Chapter 23-1-44.

The remedy for a shareholder of a publicly-traded company, however, is different. Indiana Code Section 23-1-44-8(b) provides:

---

[9] "Fair value" means "the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable." Ind. Code § 23-1-44-3.

> This section [Indiana Code Section 23-1-44-8] does not apply to the holders of shares of any class or series if, on the date fixed to determine the shareholders entitled to receive notice of and vote at the meeting of shareholders at which the merger, plan of share exchange, or sale or exchange of property is to be acted on, the shares of that class or series were a covered security under Section 18(b)(1)(A) or 18(b)(1)(B) of the Securities Act of 1933, as amended.

As a result, Professor Galanti has explained that "[d]issenters' rights are not available for the shareholders of corporations party to a merger, plan of share exchange, or sale or exchange of property, when the shares are publicly traded." 20 IND. PRAC., Business Organizations § 43.3 (2019). "This is the market exception to dissenters' rights, sometimes referred to as the Wall Street Rule because shareholders who are dissatisfied with the terms of a merger can sell their shares." *Id.* Because Biglari Holdings is a publicly traded company, the Shareholders do not have the ability to obtain payment from the company for the "fair market value" of the shares through a valuation proceeding; rather, the Shareholders' sole remedy is to sell their shares on the market.

### D. *Exclusivity of Remedies*

[40] The remedies provided in the Dissenters' Rights Statute are the exclusive remedies for dissenting shareholders. Indiana Code Section 23-1-44-8(d) states:

> A shareholder:
>
> (1) who is entitled to dissent and obtain payment for the shareholder's shares under this chapter; or

(2) who would be so entitled to dissent and obtain payment but for the provisions of subsection (b);

may not challenge the corporate action creating (or that, but for the provisions of subsection (b), would have created) the shareholder's entitlement.

[41] The Official Commentary to subsection (d) of the statute provides some background and explanation of this subsection:

Subsection (d), which establishes the exclusivity of Chapter 44's dissenters' rights remedies, deletes [Revised Model Business Corporation Act ("RMA")] language stating that such rights are exclusive "unless the action is unlawful or fraudulent with respect to the shareholder or the corporation." Deletion of this language reflects a conscious response to the Indiana Supreme Court's decision in *Gabhart v. Gabhart*, 370 N.E.2d 345 (1972). The omission of this language was continued in the 2009 amendments to the BCL.

*Gabhart* involved the interpretation of the GCA exclusivity provision, IC 23-1-5-7(c) (repealed 1986), which provided:

Every shareholder who did not vote in favor of such merger, consolidation, or exchange and who does not object in writing and demand payment of the value of his shares at the time and in the manner stated in this section shall be conclusively presumed to have assented to such merger, consolidation, or exchange.

Notwithstanding this language, the *Gabhart* court held that a minority shareholder was entitled to challenge a "freeze-out" merger as a de facto dissolution if the merger did not have a "valid purpose" - defined by the Court as a purpose intended to

advance a corporate interest. *Gabhart* refused to adopt the approach of the then-leading Delaware case, *Singer v. Magnavox Co.*, 380 A.2d 969 (Del. 1977) (later overruled in *Weinberger v. UOP, Inc.*, 457 A.2d 701, 703 (Del. 1983)), which permitted judicial inquiry into the entire fairness of the transaction on the basis of fiduciary duty owed to minority shareholders. The *Gabhart* court also found that IC 23-1-5-7(c) (repealed 1986) did establish the exclusive remedy for mergers with a "valid purpose." Absent such a "valid purpose," however, *Gabhart* held that minority shareholders were not limited to statutory appraisal rights but could also seek to enjoin the corporate transaction creating those rights.

Whether or not *Gabhart* correctly interpreted the GCA's exclusivity provision, the Commission believed the decision created substantial uncertainty about whether and to what extent minority shareholders could seek to enjoin or undo corporate transactions authorized by statute and approved by the majority. Given the potential for disruption of corporate transactions were a *Gabhart* rule applied to the BCL, the General Assembly adopted subsection (d)[10] as a categorical statutory rule that shareholders entitled to dissenters' rights may not challenge the corporate action creating that entitlement. Hence, the kind of minority shareholder challenge to corporate action permitted by *Gabhart* under IC 23-1-5-7(c) (repealed 1986) is not permitted under subsection (d). Consistent with this approach, the revised RMA exception to exclusivity for transactions between a

---

[10] Again, Indiana Code Section 23-1-44-8(d) provides:

A shareholder:

(1) who is entitled to dissent and obtain payment for the shareholder's shares under this chapter; or

(2) who would be so entitled to dissent and obtain payment but for the provisions of subsection (b);

may not challenge the corporate action creating (or that, but for the provisions of subsection (b), would have created) the shareholder's entitlement.

corporation and certain interested parties has not been included in the BCL.

In 1987, subsection (d) was amended to extend this categorical prohibition to shareholders who would be entitled to dissenters' rights but for the "market exception" of subsection (b). Such shareholders, who have the ability to sell their shares in a recognized market and at a market price, also may not challenge the corporate action that (but for the "market exception") would have created dissenters' rights.

Consequently, the Dissenters' Rights Statute "provides the exclusive remedy for minority shareholders challenging a proposed merger." *Settles v. Leslie*, 701 N.E.2d 849, 853 (Ind. Ct. App. 1998).

[42] A shareholder's ability to bring a breach of fiduciary duty claim in the context of a merger or other covered corporate action is also limited by the Dissenters' Rights Statute. In the context of a closely-held corporation, our Supreme Court has held that the Dissenters' Rights Statute gives the minority shareholder the opportunity to raise such a claim only during judicial valuation proceedings. *Fleming v. Int'l Pizza Supply Corp.*, 676 N.E.2d 1051, 1057 (Ind. 1997). The shareholder may argue during those proceedings that the shares were valued too low due to breach of fiduciary duty and fraud by majority shareholders. *Id.* The Supreme Court held:

We conclude that the legislature meant to limit a dissenting shareholder seeking payment for the value of the shareholder's shares to the statutory appraisal procedure. This accords with the policies of corporate majority rule and of ascertaining dissenters' claims on a timely basis. But we also conclude that

> the legislature did not foreclose the ability of dissenting shareholders to litigate their breach of fiduciary duty or fraud claims within the appraisal proceeding. That is, it is perfectly consistent with the shareholder's claim for payment in the appraisal process for the shareholder to allege that the value assigned to the shares in the merger or asset sale was too low because of the breach of fiduciary duty or fraud on the part of majority shareholders.

*Id.* The Court agreed that "the expression 'corporate action to which the dissenter objects' as used in Ind. Code § 23-1-44-3 includes not only the merger or asset sale itself but genuine issues of breach of fiduciary duty and fraud affecting the value of the shares at the time of the transaction." *Id.* at 1058; *see also Lees Inns of Am., Inc. v. William R. Lee Irrevocable Tr.*, 924 N.E.2d 143, 155-161 (Ind. Ct. App. 2010) (discussing the proper valuation of a dissenting shareholder's shares where breach of fiduciary duties was demonstrated), *trans. denied*.

[43] For example, in *Trietsch v. Circle Design Group, Inc.*, 868 N.E.2d 812 (Ind. Ct. App. 2007), in the context of a closely-held corporation, a shareholder sought money damages for the directors' actions that resulted in a sale of assets. We held that the shareholder was precluded from recovering such damages because Indiana's Dissenters' Rights Statute was the exclusive remedy for actions or omissions in a merger or sale of assets. *Trietsch*, 868 N.E.2d at 820 (citing *Galligan v. Galligan*, 741 N.E.2d 1217, 1225-26 (Ind. 2001)).

[44] Here, as shareholders of a publicly-traded corporation, the Shareholders' remedies under the Dissenters' Rights Statutes are limited to selling their shares,

and the exclusivity provisions limit their ability to challenge the corporate action, even through a breach of fiduciary action claim. Despite these provisions, Shareholders argue that they are entitled to monetary damages for their breach of fiduciary duty and unjust enrichment claims:

> [A]llowing post-closing claims for purely monetary damages—like Plaintiffs' breach of fiduciary duty and unjust enrichment claims here—in situations where shareholders would otherwise lack any judicial remedy at all comports with both (1) what Defendants identify as the purpose of the dissenters' rights statute (i.e., to deter injunctive claims), and (2) "the Supreme Court of Indiana['s] . . . strong reluctance to foreclose all judicial remedies for a director's breach of duty."

Appellants' Br. p. 43 (footnote omitted, citations omitted). This argument, however, goes against the exclusivity provisions of the Dissenters' Rights Statute.

[45] In support of their arguments, Shareholders rely on *Shepard v. Meridian Insurance Group*, 137 F.Supp.2d 1096 (S.D. Ind. 2001).[11] *Shepard* addressed the Dissenters' Rights Statute in the context of a publicly-traded company's "cash-out" merger, but a "cash-out" merger is not at issue here.[12] The shareholder in

---

[11] Shareholders also rely on *Orlando v. CFS Bancorp, Inc.,* No. 2:13-CV-261 JD, 2013 WL 5797624 (N.D. Ind. Oct. 28, 2013). The Court in *Orlando*, however, specifically did not address whether the Indiana Dissenters' Rights Statute barred plaintiff's requested relief. *Id.* at *4. Consequently, *Orlando* is not persuasive here.

[12] "[A] 'freeze-out' or 'cash-out' merger . . . occurs when the target corporation is merged into a wholly owned subsidiary of the acquirer, and the minority shareholders in the target corporation are forced to surrender their shares." 19 AM. JUR. 2D Corporations § 2181; *see also* 19 AM. JUR. 2D Corporations § 2165.

*Shepard* alleged that the company's directors "breached their duties to him and to other shareholders by failing to exercise reasonable care and by failing to secure a better offer" for the company's shares in the cash-out merger. *Shepard*, 137 F.Supp.2d at 1099. The shareholder sought injunctive relief to block the merger and compensatory and punitive damages.

[46] The issue in *Shepard* was "whether and how Indiana law would provide shareholders or the corporation any remedy for the directors' assumed breach of their duty of loyalty and due care to the corporation and to its shareholders when approving a cash-out merger for a publicly traded corporation." *Id.* at 1103. The court noted the differences between the Dissenters' Rights Statute remedies for publicly-traded companies and privately-held companies. "A shareholder who dissents from a merger of a privately held company may reject the company's offer of 'fair value,' which forces the company to file a judicial appraisal proceeding under the dissenters' rights statute to determine 'fair value' for the shares pursuant to Ind. Code § 23-1-44-19." *Id.* at 1102. On the other hand, in the case of a publicly-traded company, the shareholder must simply sell his or her shares at the market price.

> Because the proposed merger with State Auto is a "cash-out" merger, Shepard contends that a sale of his shares at the market price would not provide him with a meaningful remedy for the wrongs he alleges here. The market price for MIGI stock reflects the agreed price for the merger. Shepard claims that the directors breached their duties by agreeing to that very price. Also, there is no reason to expect that the prospect of any future derivative claims could be factored into that price. As discussed below, if and when the merger closes, all the shareholders hurt by the

alleged wrongs will lose their shares and thus also their standing
to pursue such claims.

*Id.* at 1102-03 (emphasis added). The court considered several options and ultimately predicted that, in the case of a cash-out merger, the Indiana Supreme Court would allow "a post-merger direct action by an individual shareholder for monetary relief." *Id.* at 1112.

[47] Shareholders argue that *Shepard* "conclusively" proves that the Dissenters' Rights Statute is not a "categorial bar to every conceivable challenge to a merger." Appellants' Reply Br. p. 20. *Shepard*, however, merely left open the possibility that the Indiana Supreme Court *might* allow a direct action by shareholders for monetary damages after a cash-out merger. Indiana courts have not addressed this issue since *Shepard*.

[48] Moreover, the Biglari Holdings merger does not involve a cash-out merger. *Shepard* also noted:

> In many situations, such a sale may provide a dissenting shareholder with an adequate remedy. The market exception is based on the assumption that the market price of the shares reflect a current fair valuation of those shares. Even if officers and directors have breached their duties in ways that have depressed the price of the stock (for example, by agreeing to a sale of assets at too low a price), one could expect, at least theoretically, that the market price would also include an adjustment or valuation for any potential shareholder derivative claims against the officers or directors for earlier wrongs.

*Shepard*, 137 F.Supp.2d at 1099. This is exactly the situation we have here. Shareholders' sole remedy under the Dissenters' Rights Statute was to sell their shares; a direct action for post-closing monetary damages for breach of fiduciary duty or unjust enrichment was not permitted by the Statute.

### E. Conclusion Regarding Counts I, II, IV, and VI

Counts I, II, and IV included breach of fiduciary duty and unjust enrichment claims related to the Reclassification Agreement, while Count VI sought declaratory relief that the Reclassification Agreement is void. We conclude that each of these claims, which relates to the merger, is barred by the Dissenters' Rights Statute. Even accepting Shareholders' facts as stated in their complaint as true, considering the allegations in the light most favorable to the Shareholders, and drawing every reasonable inference in the Shareholders' favor, we conclude that Shareholders are not entitled to relief on Counts I, II, IV, and VI. The trial court properly granted Defendants' motion to dismiss regarding Counts I, II, IV, and VI of the complaint.

# Conclusion

The trial court properly dismissed Shareholders' complaint. We affirm.

Affirmed.

Crone, J., and Altice, J., concur.